## Employment Agreement

This **Employment Agreement** (this "Agreement") is entered into as of December 1, 1999 between Eagle Point Software Corporation (the "Company"), and Kenneth Trent (the "Employee").

**Whereas**, the Company is acquiring certain assets of Surveyors Module International, LLC ("SMI") in connection with the consummation of the transactions contemplated by the Asset Purchase Agreement of even date herewith (the "Asset Purchase Agreement") among the Company, SMI, R. Stanley Trent, R. Stanley Trent, as sole Trustee of James, a Trust, created by a Contract and Indenture of Trust dated July 6, 1995, and Charles A. Peterson, as sole Trustee of Farrow, a Trust, created by a Contract and Indenture of Trust dated July 6, 1995;

**Whereas**, the Employee is currently employed by SMI;

**Whereas**, the Company desires to employ the Employee and the Employee desires to be employed by the Company, upon the terms and subject to the conditions set forth herein.

**Now therefore**, in consideration of the premises and the mutual agreements contained herein, the parties hereby agree as follows:

1. **Employment.** The Company hereby agrees to employ the Employee and the Employee hereby agrees to be employed by the Company upon the terms and subject to the conditions contained in this Agreement. The term of employment of the Employee by the Company pursuant to this Agreement (the "Employment Period") shall commence on the date hereof (the "Effective Date") and shall end on the second annual anniversary of the Effective Date, unless earlier terminated pursuant to Section 4 hereof or extended by written agreement of the parties.

2. **Duties and Responsibilities.** During the Employment Period, the Employee shall perform faithfully and loyally and to the best of his abilities the duties assigned to him hereunder and shall devote his full business time, attention and effort to the affairs of the Company and its subsidiaries and shall use his reasonable best efforts to promote the interests of the Company and its subsidiaries. Subject to the powers, authority and responsibilities vested in the Board of Directors of the Company (the "Board") and in duly constituted committees of the Board, the Employee shall have such duties on behalf of the Company and its subsidiaries as may from time to time be authorized or directed by management of the Company.

3. **Compensation.** (a) Base Salary. During the Employment Period, the Company shall pay to the Employee a base salary at the rate of $75,000 per annum ("Base Salary"), payable in accordance with the Company's payroll policy, as the same may be in effect from time to time. Such Base Salary shall be reviewed annually, and shall be subject to such annual increases, if any, as determined by the Division Vice President of President of the Company.



(b) <u>Other Benefits</u>. During the Employment Period, the Employee shall be entitled to participate in the benefit programs made available to employees of the Company generally, including medical, disability and life insurance programs and a 401(k) retirement savings plan. The Employee also shall be entitled to (i) take time off for vacation or illness in accordance with the Company's policy for employees and (ii) receive all other fringe benefits as are from time to time made generally available to employees of the Company.

(c) <u>Expense Reimbursement</u>. During the Employment Period, the Company shall reimburse the Employee, in accordance with the Company's policies and procedures, for all proper expenses incurred by him in the performance of his duties hereunder.

4. **Termination.** (a) <u>Death</u>. Upon the death of the Employee, this Agreement shall automatically terminate and all rights of the Employee and his heirs, executors and administrators to compensation and other benefits under this Agreement shall cease, except for compensation which shall have accrued to the date of death, including accrued Base Salary.

(b) <u>Disability</u>. The Company may, at its option, terminate this Agreement upon written notice to the Employee if the Employee, because of physical or mental incapacity or disability, fails to perform the essential functions of his position, with or without reasonable accommodation, required of him hereunder for a continuous period of 120 days or any 180 days within any 12-month period. Upon such termination, all obligations of the Company hereunder shall cease, except for compensation which shall have accrued to the date of termination, including accrued Base Salary. In the event of any dispute regarding the existence of the Employee's incapacity hereunder, the matter shall be resolved by the determination of a physician to be selected by the Company. The Employee shall submit to appropriate medical examinations for purposes of such determination.

(c) <u>Cause</u>. (i) The Company may, at its option, terminate the Employee's employment under this Agreement for Cause (as hereinafter defined). Any such termination for Cause shall be authorized by the Division Vice President or President of the Company. The Employee shall be given written notice by the Company of the intention to terminate his employment hereunder for Cause (the "<u>Cause Notice</u>"). The Cause Notice shall state the particular action(s) or inaction(s) giving rise to termination for Cause. The Employee shall have five days after the Cause Notice is received to cure the particular action(s) or inaction(s), to the extent a cure is possible. If the Employee so effects a cure to the reasonable satisfaction of the Company, the Cause Notice shall be deemed rescinded and of no force or effect.

(ii) As used in this Agreement, the term "<u>Cause</u>" shall mean any one or more of the following:

(A) any refusal by the Employee to materially perform his duties under this Agreement or to perform specific directives of the Company;

2

(B) any intentional act of fraud, embezzlement or theft by the Employee in connection with his duties hereunder or in the course of his employment hereunder or any prior employment, or the Employee's admission or conviction of a felony or of any crime involving moral turpitude, fraud, embezzlement, theft or misrepresentation;

(C) any gross negligence or willful misconduct of the Employee resulting in a loss to the Company or any of its affiliates, or damage to the reputation of the Company or any of its affiliates;

(D) any breach by the Employee of any one or more of the covenants contained in Section 6, 7 or 8 hereof; or

(E) any violation of any statutory or common law duty of loyalty to the Company or any of its subsidiaries.

(iii) The exercise of the right of the Company to terminate this Agreement pursuant to this Section 4(c) shall not abrogate the rights or remedies of the Company in respect of the breach giving rise to such termination.

(iv) If the Company terminates the Employee's employment for Cause, he shall be entitled to:

(A) accrued Base Salary through the date of the termination of his employment; and

(B) other benefits to which the Employee is entitled upon his termination of employment with the Company, in accordance with the terms of the plans and programs of the Company as then in effect.

(d) <u>Termination Without Cause</u>. If, during the Employment Period, the Company terminates the employment of the Employee hereunder for any reason other than a reason set forth in subsections (a), (b) or (c) of this Section 4:

(i) concurrent with such termination, the Employee shall be entitled to receive the payments and benefits specified by Sections 4(c)(iv)(A) through 4(c)(iv)(C) hereof, inclusive; and

(ii) the Company shall immediately pay the Employee his Base Salary which would otherwise have been payable hereunder for the remainder of the Employment Period had the Employee's employment hereunder not been terminated.

3

(e) <u>Voluntary Termination</u>. Upon 60 days prior written notice to the Company (or such shorter period as may be permitted by the Division Vice President or President of the Company), the Employee may voluntarily terminate his employment with the Company prior to the end of the Employment Period for any reason. If the Employee voluntarily terminates his employment pursuant to this subsection (e), he shall be entitled only to the payments specified by Sections 4(c)(iv)(A) and 4(c)(iv)(B) hereof.

**5. Federal and State Withholding.** The Company shall deduct from the amounts payable to the Employee pursuant to this Agreement the amount of all required federal, state and local withholding taxes in accordance with the Employee's Form W-4 on file with the Company, and all applicable federal employment taxes.

**6. Noncompetition; Nonsolicitation.** (a) <u>General</u>. The Employee acknowledges that in the course of his employment with the Company he has and will become familiar with trade secrets and other confidential information concerning the Company and its affiliates and that his services will be of special, unique and extraordinary value to the Company and its affiliates.

(b) <u>Noncompetition</u>. During the Noncompetition Period the Employee will not, directly or indirectly, engage in any manner of activity that is <u>directly or indirectly competitive</u> or potentially competitive with the Company or any of its affiliates or the business of the Company or any of its affiliates as conducted or planned to be conducted during the Employment Period and neither the Employee nor any person or enterprise controlled by him will become a stockholder, co-venturer, lender, director, officer, agent or employee of a corporation or member of or lender to a partnership, engage as a sole proprietor in any business, act as a consultant to any of the foregoing or otherwise engage directly or indirectly in <u>any business, that is in competition with</u> the business then conducted by the Company and its affiliates <u>in North America</u>. As used in this Agreement, the Noncompetition Period shall be that period commencing on the <u>Effective Date and</u>, if the Employee's employment hereunder is terminated pursuant to Section 4(c)(i) solely for the reasons set forth in Section 4(c)(ii)(A), <u>ending on the first anniversary</u> of such termination of employment of the Employee hereunder and, under all other circumstances, ending on the later of the first anniversary of such termination of employment or the second anniversary of the date of this Agreement.

(c) <u>Nonsolicitation</u>. The Employee further agrees that during the Noncompetition Period neither he nor any <u>person or enterprise controlled</u> by him will (i) <u>solicit for employment or employ</u> any employee of the Company or any of its affiliates or any person who was employed by the Company or any of its affiliates at <u>any time within one year prior</u> to the time of the act of solicitation, (ii) in any way cause, influence, induce, encourage or attempt to persuade any employee of the Company or any of its affiliates or any person who was employed by the Company or any of its affiliates at any time within one year prior to the time of such act to terminate his or her employment relationship with the Company or any of its affiliates or (iii) in any way, cause, influence, induce, encourage or attempt to persuade any customer or vendor of the Company or any of its affiliates to terminate or diminish its relationship or violate any agreement with any of them.

4

(d) <u>Exceptions</u>. Nothing in this Section 6 shall prohibit the Employee from being (i) a stockholder in a mutual fund or a diversified investment company, (ii) a passive owner of not more than five percent of the outstanding stock of any class of a corporation, any securities of which are publicly traded, so long as the Employee has no active participation in the business of such corporation. In addition, if Buyer enters into a license as contemplated by Section 7.7 of the Asset Purchase Agreement, then nothing in this Section 6 shall prohibit the Employee, after the termination of his employment hereunder, from engaging in any activity that is within the scope of such license.

(e) <u>Reformation</u>. If, at any time of enforcement of this Section 6, a court or an arbitrator holds that the restrictions stated herein are unreasonable under circumstances then existing, the parties hereto agree that the maximum period, scope or geographical area reasonable under such circumstances shall be substituted for the stated period, scope or area and that the court or arbitrator shall be allowed to revise the restrictions contained herein to cover the maximum period, scope and area permitted by law. This Agreement shall not authorize a court or arbitrator to increase or broaden any of the restrictions in this Section 6.

7. **Confidentiality.** The Employee shall not, at any time during the Employment Period or thereafter, make use of or disclose, directly or indirectly, any (i) trade secret or other confidential or secret information of the Company or of any of its affiliates or (ii) other technical, business, proprietary or financial information of the Company or of any of its affiliates not available to the public generally or to the competitors of the Company or to the competitors of any of its affiliates ("<u>Confidential Information</u>"), except to the extent that such Confidential Information (a) becomes a matter of public record or is published in a newspaper, magazine or other periodical available to the general public, other than as a result of any act or omission of the Employee, (b) is required to be disclosed by any law, regulation or order of any court or regulatory commission, department or agency, provided that the Employee gives prompt notice of such requirement to the Company to enable the Company to seek an appropriate protective order, or (c) is necessary to perform properly the Employee's duties under this Agreement. Promptly following the termination of the Employment Period, the Employee shall surrender to the Company all records, memoranda, notes, plans, reports, computer tapes and software and other documents and data which constitute Confidential Information which he may then possess or have under his control (together with all copies thereof).

8. **Inventions.** The Employee hereby assigns to the Company his entire right, title and interest in and to all discoveries and improvements, patentable or otherwise, trade secrets and writings and copyrightable material, which may be conceived by the Employee or developed or acquired by him during the Employment Period, which may pertain directly or indirectly to the business of the Company or any of its affiliates. The Employee agrees to disclose fully all such developments to the Company upon its request, which disclosure shall be made in writing promptly following any such request. The Employee shall, upon the Company's request, execute, acknowledge and deliver to the Company all instruments and do all other acts which are necessary or desirable to enable the Company or any of its affiliates to file and prosecute applications for, and to acquire, maintain and enforce, all patents, trademarks and copyrights in all countries.

5

**9. Enforcement.** The Employee acknowledges that he has carefully read and considered all terms and conditions of this Agreement, including the limitations imposed by Section 6 hereof. The parties hereto agree that the Company and its affiliates would be damaged irreparably in the event that any provision of Section 6, 7 or 8 of this Agreement were not performed in accordance with its terms or were otherwise breached and that money damages would be an inadequate remedy for any such nonperformance or breach. Accordingly, the Company and its successors and permitted assigns shall be entitled, in addition to other rights and remedies existing in their favor, to an injunction or injunctions to prevent any breach or threatened breach of any of such provisions and to enforce such provisions specifically (without posting a bond or other security). The Employee agrees that he will submit himself to the personal jurisdiction of the courts of the State of Iowa in any action by the Company to enforce an arbitration award against him or to obtain interim injunctive or other relief pending an arbitration decision.

**10. Representations.** The Employee represents and warrants to the Company that (i) the execution, delivery and performance of this Agreement by the Employee does not and will not conflict with, breach, violate or cause a default under any contract, agreement, instrument, order, judgment or decree to which the Employee is a party or by which he is bound, (ii) the Employee is not a party to or bound by any employment agreement, noncompetition agreement or confidentiality agreement with any other person or entity and (iii) upon the execution and delivery of this Agreement by the Company, this Agreement shall be the valid and binding obligation of the Employee, enforceable in accordance with its terms.

**11. Survival.** Sections 6, 7, 8 and 9 of this Agreement shall survive and continue in full force and effect in accordance with their respective terms, notwithstanding any termination of the Employment Period.

**12. Notices.** All notices and other communications required or permitted hereunder shall be in writing and shall be deemed given and received when (i) delivered personally or by overnight courier to the following address of the other party hereto (or such other address for such party as shall be specified by notice given pursuant to this Section) or (ii) sent by facsimile to the following facsimile number of the other party hereto (or such other facsimile number for such party as shall be specified by notice given pursuant to this Section), with the confirmatory copy delivered by overnight courier to the address of such party pursuant to this Section 12:

If to the Company, to:

Eagle Point Software Corporation
4131 Westmark Drive
Dubuque, Iowa 52002
Attention: Dennis J. George
Facsimile: (319) 556-8424

6

If to the Employee, to:

> Kenneth Trent
> 1806 Serenity Drive
> St George, Utah 84770
> Facsimile: (435) 674-9713

**13. Severability.** Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement is held to be invalid, illegal or unenforceable in any respect under applicable law or rule in any jurisdiction, such invalidity, illegality or unenforceability shall not affect the validity, legality or enforceability of any other provision of this Agreement or the validity, legality or enforceability of such provision in any other jurisdiction, but, subject to Section 6(e) hereof, this Agreement shall be reformed, construed and enforced in such jurisdiction as if such invalid, illegal or unenforceable provision had never been contained herein.

**14. Entire Agreement; Prior Agreements.** This Agreement constitutes the entire agreement and understanding between the parties with respect to the subject matter hereof and supersedes and preempts any prior understandings, agreements or representations by or between the parties, written or oral, which may have related in any manner to the subject matter hereof. This Agreement supersedes all prior agreements between the Employee and the Company concerning the Employee's employment with the Company, and none of such agreements shall be of any further force or effect whatsoever.

**15. Successors and Assigns.** This Agreement shall be enforceable by the Employee and his heirs, executors, administrators and legal representatives, and by the Company and its successors and assigns.

**16. Governing Law.** This Agreement shall be governed by and construed and enforced in accordance with the internal laws of the State of Iowa without regard to principles of conflict of laws that would result in the application of the law of another jurisdiction.

**17. Amendment and Waiver.** The provisions of this Agreement may be amended or waived only by the written agreement of the Company and the Employee, and no course of conduct or failure or delay in enforcing the provisions of this Agreement shall affect the validity, binding effect or enforceability of this Agreement.

**18. Counterparts.** This Agreement may be executed in two counterparts, each of which shall be deemed to be an original and both of which together shall constitute one and the same instrument.

7

**In Witness Whereof,** the parties hereto have executed this Agreement as of the date first written above.

EAGLE POINT SOFTWARE CORPORATION

By: _____

Title: _____SECRETARY_____

**KENNETH TRENT**

_____

::ODMA\PCDOCS\CHICAGO4\995921\2  December 1, 1999 (10:27am)

8

In Witness Whereof, the parties hereto have executed this Agreement as of the date first written above.

EAGLE POINT SOFTWARE CORPORATION

By: _____

Title: _____

KENNETH TRENT

*Kenneth Trent*   12/1/99